**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CHRISTOPHER LOHRING,

    Plaintiff,

v.

UINTA BREWING COMPANY,

    Defendant.

DOCKET NO.

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff Christopher Lohring and sets forth the following allegations against Defendant Uinta Brewing Company as its Complaint in this matter:

**I.       Parties**

1. Plaintiff Christopher Lohring ("Plaintiff") is an individual residing in Salem, Massachusetts.

2. Defendant Uinta Brewing Company ("Defendant") is a domestic company organized under the laws of the State of Utah with an address of 1722 South Fremont Drive, Salt Lake City, Utah.

**II.      Jurisdiction and Venue**

3. This Court has jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 1331 because, among other things, the claim is brought under federal statutes Lanham Trademark Act, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act"), the Federal Trademark Anti-Dilution Act, 15 U.S.C. § 1125, *et seq*. ("FTDA"), and/or the Trademark Dilution

Revision Act ("TDRA").  This Court also has subject matter jurisdiction pursuant to, among other things, 15 U.S.C. §§ 1221 and 28 U.S.C. §§ 1338 (a) and 1338 (b).

4.  This Court has personal jurisdiction over the parties because the claims set forth herein arise out of the actions of Defendant that were undertaken in this judicial district. (*See* Affidavit of Christopher Lohring, paragraphs 9-21).

5.  This Court has personal jurisdiction over the Defendant under Massachusetts "long-arm" statute M.G.L. ch. 223A §3(a) because the Defendant directly, or through designated agents, transacts business in this judicial district.

6.  This Court has personal jurisdiction over the Defendant under M.G.L. ch. 223A §3(b) because the Defendant directly, or through designated agents, contracts to supply things in this judicial district.

7.  Venue in this judicial district is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the causes of action set forth below occurred in this judicial district.

## III.   Facts Common to All Counts

8.  Plaintiff brews and distributes his own line of beer products in interstate commerce under the trademark NOTCH. (*See* Affidavit of Christopher Lohring, paragraphs 3-4).

9.  On May 3, 2011, Plaintiff received Federal Trademark Registration No. 3,955,799 from the United States Patent & Trademark Office for "NOTCH" for beer, ale, lager, stout, porter, and dealcoholized beer. (*See* Exhibit A).

10. Plaintiff is the only entity to have acquired such rights on the name NOTCH on such goods.  Specifically, Defendant does not now currently possess, and never has possessed, such rights.

11. Upon information and belief, on or about December 2010, Defendant hired the design company The Tenfold Collective, with an address of 202 East 4th Street, Loveland, Colorado, 80537, to develop newly designed beer labels and packaging. (*See* Exhibits B and C).

12. Upon information and belief, in the year 2011, The Tenfold Collective developed eighteen (18) new beer labels for the Defendant. Each of these new beer labels included a prominently displayed brand name. One of these eighteen (18) new beer labels included the brand name HOP NOTCH. (*See* Exhibits B and C).

13. Upon information and belief, Defendant has continuously displayed, distributed, and sold ale in interstate commerce under the brand name HOP NOTCH since on or about September 2011. (*See* Exhibits D and E).

14. Upon information and belief, since on or about September 2011, Defendant's agents have continuously and substantially visited the Commonwealth of Massachusetts to market, promote, and solicit sales of its HOP NOTCH ale products.

15. Upon information and belief, since on or about September 2011, Defendant has maintained a website, accessible in Massachusetts, which includes a search function whereby consumers can locate stores in Massachusetts and elsewhere that sell Defendant's HOP NOTCH ale products. Upon information and belief, Defendant's website intentionally solicits business from Massachusetts customers for Defendant's HOP NOTCH ale products. (*See* Exhibit F).

16. From June 2011 to September 2011, Defendant filed twenty-seven (27) Federal trademark applications with the U.S. Patent and Trademark Office, including thirteen (13) Intent to Use trademark applications under Section 15 U.S.C. §1051(b) of the U.S.

Trademark Act, and fourteen (14) Use In Commerce trademark applications under Section 15 U.S.C. §1051(a) of the U.S. Trademark Act. (*See* Exhibits G-GG).

17. Upon information and belief, all beer names displayed on Defendant's website from October 2011 until July 1, 2013, except for three brand names HOP NOTCH, ANNIVERSARY, and DETOUR, had a trademark application filed or a registered trademark on the prominently displayed word brand name at the U.S. Patent and Trademark Office (*See* Exhibits G-KK). On March 30, 2012, Defendant filed a Use In Commerce trademark application for the brand name DETOUR under Section 15 U.S.C. §1051(a) of the U.S. Trademark Act with the U.S. Patent and Trademark Office. (*See* Exhibit LL).

18. Upon information and belief, all beer names displayed on Defendant's website from March 20, 2012 until July 1, 2013, except for two brand names HOP NOTCH and ANNIVERSARY, had a trademark application filed or a registered trademark on the prominently displayed word brand name at the U.S. Patent and Trademark Office. (*See* Exhibits G-LL).

19. Upon information and belief, all eighteen (18) new beer label brand names developed by The Tenfold Collective for the Defendant, except for the brand names HOP NOTCH and ANNIVERSARY, had a trademark application filed or a registered trademark on the prominently displayed word brand name at the U.S. Patent and Trademark Office by September 2011. (*See* Exhibits B, H, J, K, L, O, P, Q, R, V, Z, CC, DD, EE, GG, HH, and KK).

20. Upon information and belief, Defendant was aware of Plaintiff's Federal Trademark Registration No. 3,955,799 for the mark NOTCH prior to displaying, distributing, and selling ale in interstate commerce under the brand name HOP NOTCH.

21. Upon information and belief, Defendant did not file a Federal trademark application with the U.S. Patent and Trademark Office between June 2011 and September 2011 on the brand name HOP NOTCH because Defendant was aware of Plaintiff's Federal Trademark Registration No. 3,955,799 for the mark NOTCH prior to September 2011.

22. On or about October 2011, Plaintiff became aware of ale being sold for profit bearing the trademark, "HOP NOTCH," which sales were capitalizing on the trademark of Plaintiff without permission from Plaintiff for such use. (*See* Exhibit MM; and Affidavit of Christopher Lohring, paragraph 5).

23. Since on or about October 2011, until on or about April 2013, Plaintiff contacted Defendant by e-mail and telephone to resolve this dispute. (*See* Exhibits MM-PP, and Affidavit of Christopher Lohring, paragraphs 6, 7, 12, 17, and 19).

24. Since on or about early 2012, Plaintiff and Plaintiff's agents have experienced increased actual consumer confusion between Plaintiff's NOTCH products and Defendant's HOP NOTCH ale products. (*See* Exhibits QQ-RR; Affidavit of Christopher Lohring, paragraphs 8-21; Affidavit of Christopher Poles, paragraphs 4-5; and Affidavit of Mary Ellen Leahy, paragraphs 4-5).

25. On or about October 2012, in response to Plaintiff's e-mails and calls, Defendant notified Plaintiff that it would research any consumer confusion between Plaintiff's NOTCH products and Defendant's HOP NOTCH ale products. Defendant did not reply to Plaintiff until six (6) months later, on or about April 2013, and provided only three (3) conclusory

e-mails statements from Defendant's New England sales representative, a single wholesaler of Defendant's goods, and a single craft beer retailer of Defendant's goods - that no actual confusion existed. All of these e-mail conclusory statements were made by individuals that work in the craft beer industry and rely, at least in part, monetarily on Defendant. (*See* Exhibits NN-PP).

26. On June 11, 2013, after failed attempts between the parties to resolve the matter, Plaintiff provided Defendant with a cease and desist letter regarding the sale of ale that used the trademark of Plaintiff.

27. On July 2, 2013, in response to Plaintiff's June 11, 2013 letter, Defendant filed a Petition to Cancel Plaintiff's trademark, U.S. Registration No. 3,955,799, Cancellation No. 92057478 with the U.S. Trademark Trial and Appeal Board. (*See* Exhibit SS).

28. On July 2, 2013, in response to Plaintiff's June 11, 2013 letter, Defendant also filed U.S. Trademark Application Serial No. 77/958,348 for the brand name HOP NOTCH for beer with the U.S. Patent and Trademark Office. (*See* Exhibit TT).

29. Defendant has declared that the HOP NOTCH wording is the dominant portion and trademark of its ale packaging that creates the commercial impression with consumers by filing U.S. Trademark Application Serial No. 77/958,348 for the word mark HOP NOTCH for beer with the U.S. Patent and Trademark Office. U.S. Trademark Application Serial No. 77/958,348 does not include any other graphical portions of the HOP NOTCH packaging as part of the trademark. (*See* Exhibit TT).

30. Defendant has declared a first use of the HOP NOTCH trademark of September 19, 2011 in the filing of U.S. Trademark Application Serial No. 77/958,348 with the U.S. Patent and Trademark Office. This date is well after the May 3, 2011 date that Plaintiff received

Federal Trademark Registration No. 3,955,799 from the United States Patent & Trademark Office for "NOTCH" for beer, ale, lager, stout, porter. (*See* Exhibits A and TT).

31. Defendant has not accounted to Plaintiff for these sales that have capitalized on the use of Plaintiff's trademark.

32. Plaintiff has a protectable interest in the trademark "NOTCH" and its derivatives.

33. Defendant has willfully used the Plaintiff's trademark for profit and thereby infringed upon Plaintiff's property rights, including its rights in the term and mark "NOTCH" and derivatives thereof.

34. Defendant's actions have deprived Plaintiff of substantial assets and income.


## IV.    Causes of Action

### COUNT I

### (Violation of Lanham Act for Infringement of Registered Trademark)


35. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

36. Defendant's use of the "NOTCH" name, term, trademark, and derivatives thereof has created a likelihood of confusion about the origin of the goods and services offered by Defendant.

37. Plaintiff has developed and owns a protectable trademark right in the "NOTCH" name, term, trademark, and derivatives thereof.

38. Defendant is using or has used a confusingly similar mark in such a way that it creates a likelihood of confusion, mistake and/or deception with the consuming public.

39. The products offered by Defendant in interstate commerce are the same as those offered by Plaintiff and/or the actions of Defendant make it appear that their products are associated with, affiliated with, connected to, approved by, authorized by, or sponsored by Plaintiff.

40. The use of Plaintiff's mark to identify Defendant's goods and services causes a likelihood of consumer confusion.

41. Defendant's unfairly competed with Plaintiff by the sale of ale bearing the protected phrase "NOTCH" and derivatives thereof.

42. By its actions, Defendant has unfairly competed through false designation of origin, false representation of sponsorship or affiliation, and infringement of Plaintiff's common law trademark in violation of Section 43(a) of the Lanham Act.

43. Upon information and belief, Defendant's actions were willfully intended to trade on the goodwill and reputation of Plaintiff.

44. Plaintiff requests all relief afforded under the Lanham Act for the actions and omissions set forth herein; including but not limited to injunctive and monetary relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT II

### (Violation of G.L. c. 93A)

45. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

46. Defendant engaged in trade or commerce within the Commonwealth of Massachusetts as that term is defined by Chapter 93A.

47. Due to the conduct alleged herein, Defendant engaged in unfair competition and unfair and deceptive trade practices under Chapter 93A.  Among other things, Defendant wrongfully used Plaintiff's trademark for profit for its own use without license or consent.

48. By its actions, Defendant is "palming off" the trademark of Plaintiff and creating consumer confusion due to their unauthorized use of the term "NOTCH" and derivatives thereof in the sale of their products.

49. Plaintiff's trademark has acquired a secondary meaning, such that confusion as to their source is likely to arise if Defendant is allowed to copy it.

50. Upon information and belief, a substantial part of the conduct set forth herein occurred primarily or substantially within the Commonwealth of Massachusetts and violates G.L. c. 93A, §§ 2, 11.

51. Defendant's actions described herein were performed willfully and knowingly.

52. As a result of the unfair and deceptive conduct set forth herein, Plaintiff sustained injuries, including but not limited to, irreparable injury to trademarks, trade names, goodwill and reputation, actual damages and lost profits, out of pocket expenses to mitigate the issues described herein, and litigation costs and expenses, including attorney's fees, associated with the pursuit of this matter and the filing of this action.

53. Plaintiff is entitled to be compensated for all harm sustained by it and to all damages allowed by law, including treble damages, costs, interest, and attorney's fees.

**COUNT III**

**(Common Law Trade Name Infringement)**

54. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

55. Massachusetts common law protects trade names and prevents others from using the same name or a similar name in order to mislead the public by "palming off" their goods as those of the plaintiff.

56. As set forth more fully above, Defendant is using and/or has used the same name or a similar name, products and services as Plaintiff which results, or shall result, in misleading the public about the origin of the goods and services.

57. In this way, Defendant "palming off" the goodwill of Plaintiff's marks and injuring Plaintiff's business and reputation.

58. The wrongful actions of Defendant described herein were performed willfully and knowingly.

59. Plaintiff has been harmed by the conduct alleged herein and is entitled to be compensated for the damages sustained as provided by law, including lost royalties, dilution of trademark value, harm to goodwill and reputation, lost profits, costs, interest and attorney's fees.

## COUNT IV

### (Trade Name and Trade Mark Infringement in Violation of

### Massachusetts General Laws, c. 110H, § 1 *et seq.*)

60. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

61. Plaintiff has a trademark as recognized under Massachusetts law.

62. Mass. General Laws c. 110H, § 12 prohibits the use, without the consent of the registrant, of any reproduction, counterfeit, copy, or colorable imitation of a mark, such as Plaintiff's, that is registered in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

63. Mass. General Laws c. 110H, § 12 also prohibits the manufacture, use, display, or sale of any counterfeits or imitations of products or services via use of a registered trademark such as the use of Plaintiff's mark as set forth above.

64. As set forth more fully above, Defendant is violating and/or has violated each of these provisions to their benefit and to the detriment of Plaintiff.

65. Upon information and belief, the wrongful actions of Defendant described herein were performed willfully and knowingly.

66. Pursuant to General Laws c. 110H, § 14(a), an owner of a mark may proceed by suit to enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof and the court may grant injunctions to restrain the manufacture, use, display, or sale as may be considered by the court as just and reasonable.  Based upon the foregoing facts, an injunction in this matter is just and reasonable to protect Plaintiff's names and marks.

67. Pursuant to General Laws c. 110H, § 14(a), the court may require Defendant to pay to the owner of a mark all profits derived from and all damages suffered by reason of the wrongful manufacture, use, display, or sale of products with the Plaintiff's mark.

68. Pursuant to General Laws c. 110H, § 14(a), the court, in its discretion, may enter judgment for an amount not to exceed 3 times the profits obtained by Defendant from its

unauthorized use of the mark (or three times any other damages) and also order Defendant to pay the reasonable attorneys' fees of Plaintiff as Defendant, upon information and belief, committed their wrongful acts with knowledge or in bad faith.

69. Plaintiff has been harmed by the conduct alleged herein and is entitled to be compensated for the damages sustained to the full extent of the Massachusetts statutes set forth herein and in amounts to be proven at trial.

## COUNT V

### (Trade Name and Trade Mark Dilution in Violation of

### Massachusetts General Laws, c. 110H, § 13 *et seq*.)

70. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

71. General Laws c. 110H, § 13, provides protection against dilution of the distinctive quality of a mark notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

72. Plaintiff's mark is distinctive under the G. L. c. 110H, § 13.

73. The use of a similar mark by Defendant has created a likelihood of dilution because, among other things, (1) there will be a reduction of the value of Plaintiff's marks caused by actual or potential confusion due to the defendants' conduct, (2) there is injury resulting to Plaintiff from Defendants' use of the mark that tarnishes the reputation associated with Plaintiff's marks, and/or (3) there has been a diminution in the uniqueness and individuality of the marks by the actions of defendants set forth herein.

74. As set forth more fully above, Defendant is violating and/or has violated the Massachusetts Anti-Dilution statute to its benefit and to the detriment of Plaintiff.

75. Upon information and belief, the actions of Defendant described herein were performed willfully and knowingly.

76. Plaintiff has been harmed by the conduct alleged herein and is entitled to injunctive relief and to be compensated for the damages sustained as provided by law, including lost royalties, dilution of trademark value, harm to goodwill and reputation, lost profits, costs, interest, and attorney's fees.

## COUNT VI

### (Request for Preliminary and Permanent Injunction)

77. Plaintiff restates and realleges each of the foregoing paragraphs as if fully set forth herein.

78. On the facts alleged herein, and pursuant to Massachusetts common law, General Laws c. 93, Section 42A, c. 93A, Sections 2, 11, and c. 110H, *et seq*., Plaintiff is entitled to injunctive relief to remedy the harm being caused by Defendant.

79. Plaintiff has shown a likelihood of success on the merits of its claims.

80. Plaintiff has shown that there is a substantial risk of irreparable harm in the absence of injunctive relief and that it has no adequate remedy should the trademark infringement continue unabated.

81. Plaintiff has shown that there is no legitimate harm to Defendant should an injunction issue.

82. Plaintiff has shown that public policy and legislative mandate favor the issuance of an injunction to prevent the trademark infringement and dilution asserted herein.

83. Plaintiff is entitled to first a preliminary, and then a permanent, Order from this Honorable Court, as follows:

    (1)    Enjoining Defendant, and anyone acting in concert with Defendant or on its behalf, from using trademark belonging to Plaintiff;

    (2)    Requiring Defendant forthwith to remove all indicia of the "NOTCH" trademark or its derivatives from any of its products, services, websites or other commercial marketing material; and

    (3)    Requiring Defendant to forthwith provide a full accounting of all sales of any products it has made, offered for sale, or sold that bear any indicia of the name or term "NOTCH" and any derivative, logo, name, trademark or tradename associated therewith.

**JURY DEMAND**

Plaintiff demands a trial by jury on all counts of the Complaint that are so triable.

**WHEREFORE**, Plaintiff prays that this Honorable Court:

    (a)    Enter judgment in its favor on all counts of this Complaint;

    (b)    Award damages and all other remedies available on each count of this Complaint to the full extent allowed by law and in equity;

    (c)    Award costs, interest, attorneys fees, multiple and punitive damages where appropriate and as allowed by law;

(d)     Enter any and all injunctive relief as allowed by law, including an Order

consistent with Count VI, above; and

(e)     Enter such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

**Mr. Christopher Lohring**

By its attorney,

*/s/ Daniel N. Smith*
Daniel N. Smith (BBO#  668943)
smith@patentstrademarklaw.com
NEW ENGLAND PATENT & TRADEMARK
1 Salem Green, Suite 405
Salem, MA  01970
(978) 882-0160

Dated:      August 2, 2013